UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY D. JACKSON, CDCR #BJ-3001,<br><br>                           Plaintiff,<br><br>vs.<br><br>WARDEN HILL, ASSOCIATE WARDEN LEWIS, CORRECTIONAL COUNSELOR GARCIA and SECRETARY MACOMBER,<br><br>                          Defendants. | Case No.: 24cv1824-WQH (JLB)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND**<br><br>**(2) DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

Plaintiff Tracy D. Jackson, a state inmate incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, along with a motion to proceed in forma pauperis ("IFP"). (ECF Nos. 1-2.)

I.    **Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP.

*See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets.  *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).  Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed.  28 U.S.C. § 1915(b)(1)&(2); *Bruce*, 577 U.S. at 84.

In support of his IFP motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official.  (ECF No. 3 at 1.)  The document shows he had an average monthly balance of $208.60 and average monthly deposits of $155.73, with an available balance of $106.03.  *Id*.  Plaintiff's Motion to Proceed IFP is **GRANTED** and the Court assesses an initial partial filing fee of $41.72.  Plaintiff remains obligated to pay the remaining $308.28 in monthly installments irrespective of whether this action is dismissed.  *Bruce*, 577 U.S. at 84; 28 U.S.C. § 1915(b)(1)&(2).

II.     **Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

    A.     **Standard of Review**

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails

to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quote marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.     Allegations in the Complaint**

Plaintiff alleges that since he filed an inmate healthcare grievance on April 17, 2024, due to having seizures—which he later found was poisoning—Defendants Warden Hill, Associate Warden Lewis, and Correctional Counselor Garcia, under the supervision of Defendant Secretary of the California Department of Corrections and Rehabilitation

("CDCR") Macomber, engaged in a pattern of racketeering, criminal enterprise, and conspiracy to deprive him of due process based on racial discrimination in connection with a classification hearing in which they took advantage of his position as a mental health inmate to deny him a fair and impartial hearing on his request for entry into the Male Community Reentry Program.[1] (ECF No. 1 at 4-5.) Plaintiff alleges that when he appealed the decision not to release him, RJD employees conspired to have him killed with the use of unnecessary deadly force during a cell extraction on July 20, 2024. (*Id*. at 4.) After the cell extraction, he was placed in administrative segregation pending a disciplinary hearing. (*Id*. at 5.) Plaintiff alleges the Defendants delayed, destroyed, and tampered with his incoming and outgoing mail and filed false disciplinary charges designed to conceal their actions of attempting to keep him in prison and/or murder him in retaliation for his assertion of the rights of other inmates who were also near their release dates. (*Id*. at 4-5.)

Plaintiff alleges Defendants "almost made it impossible" for him to access the law library and failed or refused to accommodate inmates under the Americans with Disabilities Act ("ADA"). (*Id*. at 6.) He alleges that "on the days & times I was bust in the head by the C/O and had injuries, I was denied adequate medical treatment." (*Id*.)

C.  Discussion

a)  Fourteenth Amendment Due Process Claim

Plaintiff claims he was denied due process under the Fourteenth Amendment in connection to his denial of release into the community reentry program and in connection to false disciplinary charges. (ECF No. 1 at 4-5.) He presents as exhibits the classification committee notes and the denial of his appeal of the decision, which indicate he was found not to meet the criteria for community release. (*Id*. at 10, 18.) The Court notes that Plaintiff may not rely on such documents as a substitute for factual allegations necessary to support

---

[1] "The Male Community Reentry Program (MCRP) is a voluntary program for eligible males who have two years or less of their prison sentence left to serve. This allows eligible people committed to state prison to serve the end of their sentence in the community, in lieu of confinement in state prison." *Kirkwood v. Ramirez*, 2023 WL 11281122, at *8 (E.D. Cal. Oct. 17, 2023).

his claims, which are required to be included in the Complaint. *See Arnold v. Hearst Mag. Media, Inc.*, No. 19cv1969-JAH (MDD), 2020 WL 3469367, at *8 (S.D. Cal. June 24, 2020) ("Exhibits attached to a complaint are not a substitute for factual allegations.").

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

A prisoner is entitled to due process protections during a disciplinary hearing where protected liberty interests are at stake. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003). To show that a disciplinary proceeding implicates a liberty interest protected by the Due Process Clause, a prisoner must show that his sentence was exceeded in "an unexpected manner" or resulted in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. If no such liberty interest is implicated, a prisoner is granted minimum due process, which requires only that the outcome be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985). If a protected liberty interest arises, due process requires written notice of the charges and evidence relied on and the reasons for the action taken, an opportunity "to call witnesses and present documentary evidence in defense when" doing so "will not be unduly hazardous to institutional safety or correctional goals," assistance at the hearing if necessary, and an impartial factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

Plaintiff's allegations regarding the filing of false disciplinary charges does not state a due process claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F.Supp.2d 1216, 1222 (S.D. Cal. 1997), aff'd, 168 F.3d 498 (9th Cir. 1999); *see also e.g. Gadsden v. Gehris*, No.

20cv0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves."). Neither does Plaintiff plausibly alleged he was denied any procedural guarantee during a disciplinary proceeding or that any guilty finding was not "supported by some evidence in the record" sufficient to satisfy due process. *Hill*, 472 U.S. at 454-55; *Wolff*, 418 U.S. at 564-71.

Neither has Plaintiff stated a due process claim based on the denial of his release into the community reentry program at his classification hearing because inmates do not have a due process right to a particular classification or custody level. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("[A] prisoner has no constitutional right to a particular classification status."); *Sandin*, 515 U.S. at 480 ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed."); *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) ("Whatever liberty interest [in parole that] exists is, of course, a *state* interest created by California law."). Due process requires a parole applicant be given an opportunity to be heard and a statement of reasons for a denial of parole; "[t]he Constitution does not require more." *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 16 (1979); *see also Patterson v. Cortez*, 2019 WL 3802194, at *5 (C.D. Cal. Aug. 13, 2019) (there is no cognizable "liberty interest to be placed into a community correctional facility via the MCRP program" because "prisoners do not have a constitutional right to be housed in any specific facility.")

Plaintiff's Fourteenth Amendment due process claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### b) First Amendment Retaliation Claim

Plaintiff claims Defendants filed the false disciplinary charges in retaliation for his having filed grievances on behalf of other inmates who were near their release dates. (ECF No. 1 at 3-5.) "[A] viable claim of First Amendment retaliation entails five basic elements:

(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The alleged adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.") Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and protected conduct. *Watison*, 668 F.3d at 1114.

The Complaint is lacking any specific factual allegations regarding why Plaintiff contends any Defendant took any action in response to his protected activity and is entirely conclusory in this respect. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity); *Iqbal*, 556 U.S. at 678 (the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" do not state a § 1983 claim for relief); *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) ("The [First Amendment] right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Plaintiff's First Amendment retaliation claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

///

    **c) Eighth Amendment Claim**

Plaintiff claims in entirely conclusory terms that unnecessary deadly force was used against him during a cell extraction and that he was denied adequate medical care. (ECF No. 1 at 4, 6.) The Cruel and Unusual Punishments Clause of the Eighth Amendment forbids prison officials from "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The principles underlying the Eighth Amendment's prohibition on the infliction of cruel and unusual punishment also "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101-03 (1976).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind' . . . [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety;" he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The allegations in the Complaint with respect to the Eighth Amendment claim are entirely conclusory and therefore fail to state a claim. *Id.*; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim). Plaintiff's Eighth Amendment claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### d) Access to Courts claim

Plaintiff alleges in entirely conclusory terms that Defendants interfered with his mail and made it nearly impossible to access the prison law library in violation of his right of access to the courts. (ECF No. 1 at 4-6.) Prisoners have a federal constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346, 354 (1996). However, they must allege "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing

litigation, such as the inability to meet a filing deadline or to present a claim.'" *Id.* at 348; *Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (actual injury is an "inability to file a complaint or defend against a charge.")

There are no allegations that Plaintiff suffered an actual injury as a result of the alleged interference with his mail or law library access. Plaintiff's access to courts claim is therefore dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### e) Discrimination and ADA Claims

Finally, Plaintiff claims in an entirely conclusory manner that the denial of his request for community release was racially motivated and that the Defendants have discriminated against inmates in violation of the ADA. (ECF No. 1 at 4-6.) The Complaint fails to state an ADA claim because it fails to plausibly allege any action by any Defendant was taken by reason of a disability. *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007). Neither does the Complaint plausibly allege any defendant intentionally discriminated against Plaintiff based on membership in a protected class. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) ("[N]either prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes.") (quoting *Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999)).

Plaintiff's discrimination and ADA claims are therefore dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### D. Leave to Amend

In light of his pro se status, the Court grants Plaintiff leave to amend his Complaint in order to attempt to address the pleading deficiencies identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro

se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted).

### III. Conclusion and Orders

Accordingly, good cause appearing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2) **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $41.72 initial partial filing fee as well as the remaining $308.28 balance of the filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring

amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: 11/12/2024

*William Q. Hayes*
Hon. William Q. Hayes
United States District Judge